IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JIF TRADING LLC,

    **Plaintiff,**

        **v.**                    Civil **No.** 21-1170 (FAB)

DANIEL MIZRAHI, *et al.*,

    **Defendants.**

## OPINION AND ORDER

Before the Court is plaintiff JIF Trading LLC's "MOTION FOR ENTRY OF DEFAULT JUDGMENT" (Docket No. 18.)  For the reasons stated below the motion is **GRANTED**.

### I.   PROCEDURAL BACKGROUND

On April 19, 2021, JIF Trading LLC ("JIF") brought this diversity action against Daniel Mizrahi, a/k/a Danny Mizrahi ("Mizrahi"), Aleksandra Berkovich, a/k/a Aleksandra Mizrahi ("Berkovich") and their Conjugal Partnership (collectively "defendants") seeking to collect certain sums of money for jewelry and watches sold and delivered. on July 29, 2021, defendants were served by publication (Docket No. 11).  Upon defendants' failure to appear or answer the complaint, on October 15, 2021, plaintiff moved for the entry of default against them (Docket No. 12).  On October 19, 2021, the Court entered default against defendants (Docket No. 14).

## II.  DEFAULT JUDGMENT STANDARD

After an entry of default has been made, "the court . . . may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcón v. Autoridad de Energía Eléctrica, 301 F.3d 1, 2 (1st Cir. 2002) (citing Quirindongo Pacheco v. Rolón Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  The party in default "is taken to have conceded the truth of th[ose] factual allegations." Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

Fed. R. Civ. P. 55 provides that following entry of default, a plaintiff may move the Clerk to enter judgment for a sum certain as prayed for in the complaint. In all other cases, following entry of default a plaintiff may move the Court to enter default judgment, conducting the hearings that the Court may deem necessary if it needs to, among other things, determine the amount of damages, or establish the truth of any allegation by evidence. See Fed. R. Civ. P. 55(b)(2).

Here, plaintiff's main claim is for a sum certain, as alleged in the complaint and as verified by the declaration of José E.

Rosell ("Rosell") and the exhibits attached to the declaration, submitted in support of the motion. Plaintiff's other claim is for damages resulting from defendants' payment default, which can be made certain by computing the applicable interest rate to the principal amount owed. Accordingly, the Court has sufficient evidence on the record to issue default judgment against defendants without the need for a hearing.

After reviewing the facts of the complaint, which are deemed as true upon the default entered against defendants and after reviewing the declaration of Rosell submitted in support of the motion, this Court makes the following findings of fact and conclusions of law.

## III. THE PARTIES

JIF is a for profit limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico. JIF operates a jewelry store under the trade name Club Jibarito, located at 202 Cristo Street, Old San Juan. JIF is an authorized dealer of luxury watches and jewelry manufactured by and sold under the brand names Audemars Piguet ("AP") and Chopard, among other designers.

Mizrahi and Berkovich are married to each other and are residents of New Jersey. The record reflects that defendants'

last known addresses are 9 Somerset Lane, Apt. 119, Edgewater, New Jersey, 07020, and 121 NE 34th Street #3205, Miami, Florida, 33137.

## IV.  FACTUAL BACKGROUND

Beginning on or around June 16, 2019, Mizrahi began to express an interest to JIF, represented by Rosell, in purchasing certain Chopard jewelry and AP watches.  Personally, through telephone conversations and instant messaging platforms, Mizrahi requested information from Rosell on specific jewelry and watches, which Rosell provided through these platforms.  These exchanges led to the sale of several items of Chopard jewelry and two AP watches, which Mizrahi purchased for himself and Berkovich.  The specific transactions and related collection efforts are detailed below.

### A.  Sale of Chopard Jewelry

On July 15, 2019, Mizrahi agreed to purchase a Chopard necklace Happy Diamonds Icon Hand, with item code 797864-1003 at an agreed price of $2,885.00.  On that same date, the item was shipped, through UPS, to Mizrahi to the New Jersey address.  On July 17, 2019, Mizrahi confirmed delivery of this item.

On July 23, 2019, Mizrahi agreed to purchase a Happy Diamonds Good Luck Charm, item code 799898-5003, a Happy Diamonds Good Luck Charm, item code 799898-5001 and a Happy Diamonds Icon Heart, item code 83A611-5001, at the agreed prices of $8,320.00,

$2,670.00, and $2,800.00, respectively.  On July 30, 2019, these items were shipped, through UPS, to Mizrahi to the New Jersey address.  On August 2, 2019, Mizrahi confirmed delivery of these items.  On July 25, 2019, Rosell sent an invoice to Mizrahi by e-mail, for the four previously referenced Chopard items.

On August 9, 2019, Mizrahi agreed to purchase three Chopard bracelets with item codes 857863-5002, 857863-1003 and 857864-5002 at the agreed prices of $1,814.00, $1,814.00, and $2,516.00, respectively.  On August 12, 2019, Rosell sent to Mizrahi an e-mail with an invoice for these three items.  On August 15, 2019, these items were shipped, through UPS, to Mizrahi to the New Jersey address.  The items were delivered to Mizrahi on August 17, 2019.

**B.   Sale of AP Watches**

On July 16, 2019, Mizrahi asked Rosell to ship to the New Jersey address an AP watch with item code 264700R.OO.A125CR.01 to see it in person before deciding on its purchase.  On that same date, the AP watch was shipped, through UPS, to Mizrahi to the New Jersey address.  Rosell informed Mizrahi that he would sell the AP watch at a price of $38,000.00 if Mizrahi opted to keep the watch.  On July 18, 2019, Mizrahi confirmed receipt of this AP watch.  On July 25, 2019, Rosell sent to Mizrahi an e-mail with an invoice for this AP watch.

On August 2, 2019, Mizrahi asked Rosell about a certain AP watch with item code 264700R.OO.100OR.02, and sent Rosell a picture of the watch through text message.  On September 9, 2019, Mizrahi confirmed the purchase of this AP watch at an agreed price of $59,000.00.  On that same date, Rosell shipped, through UPS, this AP watch to Mizrahi to the New Jersey address.  On September 10, 2019, Mizrahi confirmed receipt of this AP watch.

C.    **Payment Demands**

On July 25, 2019, plaintiff, through Rosell, began to demand payment to Mizrahi on the first four purchased items of Chopard jewelry and the first purchased AP watch.  Rosell continued to demand payment on these items almost daily as well as on the other three items of Chopard jewelry and the other AP watch after they were purchased and delivered.  Specifically, on August 12, 2019, Rosell began to demand payment on the other three purchased items of Chopard jewelry for which he sent Mizrahi an invoice to his e-mail address.

By September 10, 2019, all items of Chopard jewelry and the two AP watches had been delivered to the address provided by Mizrahi and he had confirmed receipt of all items.  Thereafter Rosell continued to demand payment to Mizrahi on a regular basis through the instant messaging platforms, and continued to send him invoices for the balance owed.

Throughout the exchanges Rosell had with Mizrahi, the latter promised to pay by wire transfer for the purchased items on numerous occasions, but never did so. Mizrahi even provided a credit card information to pay for the items, but when Rosell attempted to debit the card, the transaction was declined. Despite all the payment demands made by Rosell, defendants have yet to pay for any of the items. Defendants never sent any notice to plaintiff complaining either that the items of jewelry were not delivered as ordered or that they were defective.

## V. DISCUSSION

### A. Claim for Breach of Contract

Under Article 1044 of the Puerto Rico Civil Code ("Civil Code"), obligations arising from a contract have legal force between the contracting parties and must be fulfilled in accordance with its stipulations. PR Laws Ann. tit. 31 § 2994. Pursuant to Article 1054 of the Civil Code, a party seeking to prove breach of contract must show the existence of a valid contract and a breach by one of the parties to that contract. Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 152 (D.P.R. 2007). A valid contract requires consent of the parties, a definite object which is the subject of the contract, and the cause for the obligation which may be established. PR Laws Ann. tit. 31 § 3391.

Article 1344 of the Civil Code states that "[b]y a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same." PR Laws Ann. tit. 31 § 3741.  In turn, Article 1339 of the Civil Code provides that the sale is perfected and shall be binding if the parties have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered. PR Laws Ann. tit. 31 § 3746.

Here, all the elements of a valid and binding contract of purchase and sale are present.  The parties agreed as to the specific items of Chopard jewelry and AP watches to be delivered and the specific price for each item.  There was a definite object (i.e., specific Chopard jewelry and AP watches); consent (i.e., a meeting of the minds manifested by the parties' communications and their ensuing actions, particularly:  shipment of the items, acknowledgment of receipt of the items, demands of payment for the items and promises of payment for the items); and a valid cause (i.e., delivery of the items and the promise to pay for them).

Plaintiff fulfilled its contractual obligation by delivering the purchased items to Mizrahi who confirmed their receipt.  Defendants failed, however, to fulfill their payment obligation.  As a result of this breach, defendants owe plaintiff

the principal amount of $119,819.00 for the Chopard jewelry and AP

watches sold and delivered.

### B. Claim for Interest

Plaintiff also claims interest on the principal amount

owed from September 10, 2021, until full payment is made.   This

claim is premised on the Civil Code.   Article 1077 of the Civil

Code provides as follows:

> Should the obligation consist of the payment of a sum of
> money, and the debtor should be in default, the indemnity
> for damages, if not otherwise stipulated, shall consist
> of the payment of the interest agreed upon, and should
> there be no agreement, the payment of the legal interest.
> Legal interest shall be deemed to be the interest fixed
> by the Office of the Commissioner of Financial
> Institutions; provided, that such interest shall be
> simple interest and not compound interest.   PR Laws Ann.
> tit. 31 § 3025.

According to Article 1053 of the Civil Code, a party who

has an obligation to deliver or to do some act, is in default from

the moment the creditor demands the fulfillment of his obligations,

judicially or extrajudicially.   PR Laws Ann. tit. 31 § 3017.   The

non-payment results in the assessment of legal interest, pursuant

to Article 1077, in the absence of a stipulation to the contrary

when the obligation is pay a sum of money.   Reyes v. Banco Santander

de P.R., 583 F.Supp. 1444, 1447 (D.P.R. 1984).   The reasoning

behind this provision has been explained as follows:

> The creditor of a sum of money who claims an indemnity
> because of a delay in payment is not required to prove

that such delay caused him a detriment; he has the right
to receive interest for the delay without being required
to justify any loss.  The reason for this is that he who
expects his money on a certain day always suffers a
detriment when he must wait for payment.  Money being a
fruitful thing, easy to place, the creditor is always
deprived of the revenue of his capital.  Id. at 1447,
n. 4, citing Planiol, M., Treatise on the Civil Law,
Vol. 2, Part 1265 (Louisiana State Law Institute trans.
11th ed. 1939, at pp. 158-159).

As discussed above, the Court holds that defendants owe
plaintiff the principal amount of $119,819.00 for jewelry sold and
delivered.  All items had been delivered by September 10, 2019.
Prior to and after that date, plaintiff demanded full payment for
the delivered items on several occasions.  Despite multiple payment
promises made by Mizrahi to Rosell, the amount of $119,819.00 is
still owed.  Accordingly, the Court holds that defendants were in
default with respect to the payment of the full principal amount
at the very least since September 10, 2019.

As of September 10, 2019, the legal interest fixed by
the Office of the Commissioner of Financial Institutions was 6.50%
per annum.  Thus, plaintiff is entitled to interest on the
principal amount of $119.819.00, at a rate of 6.50% per annum from
September 10, 2019, until full payment is made. As of November 18,
2021, the interest accrued on the principal amount is $17,070.10.
Interest continues to accrue at a per diem rate of $21.34, from
November 19, 2021, until full payment is made.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** plaintiff's Motion for Default Judgment and consequently, ORDERS defendants to pay plaintiff, jointly and severally, the principal amount of $119,819.00, plus interest accrued on that amount in the amount of $17,070.10, from September 10, 2019, up to November 18, 2021, plus any interest accrued thereafter at a *per diem* rate of $21.34, until full payment is made.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 23, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE